**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6499
E-mail: jpafiti@pomlaw.com
*- additional counsel on signature page -*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEONG ROH, Individually and on Behalf of All Others Similarly Situated,<br><br>                                         Plaintiff,<br><br>     vs.<br><br> YIRENDAI LTD., YIHAN FANG, and YU CONG,<br><br>                                         Defendants | Case No.:<br><br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Seong Roh ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Yirendai Ltd. ("Yirendai" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued

by and disseminated by Yirendai; and (c) review of other publicly available information concerning Yirendai.

## **NATURE OF THE ACTION AND OVERVIEW**

1.      This is a class action on behalf of persons and entities that acquired Yirendai securities between May 11, 2016, and August 24, 2016, inclusive (the "Class Period"), against the Defendants, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Yirendai is a peer-to-peer lending company headquartered in China that purportedly connects investors and individual borrowers. The Company claims to have facilitated over $1.9 billion in loans from its inception in March 2012 through December 31, 2015.

3.      On August 24, 2016, *Bloomberg* reported that China had imposed limits on peer-to-peer lending, citing authorities' concern over defaults and fraud among the nation's 2,349 online lenders. Specifically, *Bloomberg* reported that under the new regulations, lenders are barred from taking public deposits or selling wealth management products, and must appoint qualified banks as custodians and improve information disclosure. *Bloomberg* also reported that individual borrowing is now limited to 1 million yuan ($150,000) from peer-to-peer websites, including a maximum of 200,000 yuan from any one site.

4.     On this news, Yirendai's American Depositary Share ("ADS" or "share") price fell $6.92, or 22%, to close at $24.52 per share on August 24, 2016, on unusually heavy trading volume.

5.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company was experiencing an increasing amount of fraud related to customer applications for its loan products; (ii) the implementation of new anti-fraud regulations by the Chinese government, in response to increasing fraud in the industry, could have a negative impact on the Company's performance; and (iii) as a result of the foregoing, Defendants' statements about Yirendai's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Yirendai securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Yirendai Ltd. is a Cayman Islands corporation with its principal executive offices located in Beijing, China. Yirendai's ADSs trade on the New York Stock Exchange ("NYSE") under the ticker symbol "YRD."

13.     Defendant Yihan Fang ("Fang") has served at all relevant times as the Chief Executive Officer ("CEO") of Yirendai.

14.     Defendant Yu Cong ("Cong") has served at all relevant times as the Chief Financial Officer ("CFO") of Yirendai.

15.     Defendants Fang and Cong are collectively referred to hereinafter as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Yirendai is a peer-to-peer lending company headquartered in China that purportedly connects investors and individual borrowers. The Company claims to have facilitated over $1.9 billion in loans from its inception in March 2012 through December 31, 2015.

### Materially False and Misleading
### Statements Issued During the Class Period

17.     The Class Period begins on May 11, 2016. On that day, Yirendai issued a press release entitled, "Yirendai Reports First Quarter 2016 Financial Results." Therein, the Company, in relevant part, stated:

> BEIJING, May 11, 2016 /PRNewswire/ -- Yirendai Ltd. (NYSE: YRD) ("Yirendai" or the "Company"), a leading online consumer finance marketplace in China, today announced its unaudited financial results for the quarter ended March 31, 2016.

5

For the first quarter of 2016, Yirendai facilitated US$534.5 million of loans to qualified individual borrowers on its online marketplace, representing a 110% year-over-year growth, recognized total net revenue of US$85.1 million, up 187% from the same period in 2015 and recognized net income of US$20.1 million, representing an increase of 355% from the first quarter of 2015.

\* \* \*

"We continued to experience strong business demand in the first quarter of 2016, as we grew our loan origination sequentially during what is usually a seasonally slow quarter. Our loan portfolio credit performance remains solid," said Mr. Ning Tang, Executive Chairman of Yirendai and CEO and founder of CreditEase. "We expect to further extend our market leadership in China's consumer finance market through technology innovation and data driven credit underwriting and risk management capabilities, which was reinforced by the success completion of the issuance of RMB 250 million asset-backed securities with the underlying assets being loans from our online consumer finance marketplace."

"Our solid first quarter financial results demonstrated strong customer demand of our products and services, as well as recognition of our brand," said Ms. Yihan Fang, CEO of Yirendai. "We will continue to focus on new product development and invest in our technology capability in customer acquisition, risk management, process automation and big data analytics to further strengthen our credit underwriting and risk management capabilities to enable our long term sustainable growth."

### First Quarter 2016 Financial Results

**Total amount of loans facilitated** in the first quarter of 2016 was US$534.5 million, increased by 110% year-over-year from US$255.0 million in the same period of 2015. As of March 31, 2016, the Yirendai platform had facilitated approximately US$2.4 billion in loan principal since its inception.

**Total fees billed** (non-GAAP) in the first quarter of 2016 were US$129.6 million, increased by 159% from US$50.0 million in the same period of 2015.

**Total net revenue** in the first quarter of 2016 was US$85.1 million, increased by 187% from US$29.7 million in the same period of 2015. The increase of total net revenue was mainly attributable to the growth of loan origination volume and change of product mix on the platform.

**Operating costs and expenses** in the first quarter of 2016 were US$53.8 million, compared to US$23.8 million in the same period of 2015. The increase in operating costs and expenses was in line with our loan volume growth.

**EBITDA** (non-GAAP) in the first quarter of 2016 was US$31.6 million, increased by 426% from US$6.0 million in the same period of 2015. The significant increase of EBITDA was primarily due to substantial increase in revenue as well as seasonally lower customer acquisition cost due to strong business demand.

**Net income** in the first quarter of 2016 was US$20.1 million, increased by 54% from US$13.0 million in the previous quarter and 355% from US$4.4 million in the same period of 2015.

**Basic and diluted income per share** in the first quarter of 2016 was US$0.17, increased by 35% from US$0.13 in the previous quarter and 289% from US$0.04 in the same period of 2015.

**Basic and diluted income per ADS** in the first quarter of 2016 was US$0.34, increased by 35% from US$0.25 in the previous quarter and 289% from US$0.09 in the same period of 2015.

As of March 31, 2016, **cash & cash equivalents** excluding risk reserve fund balance was US$172.2 million, increased by 32% from US$130.6 million as of December 31, 2015.

**Net cash generated from operating activities** in the first quarter of 2016 was US$49.2 million, increased by 88% from US$26.2 million in the previous quarter.

**Risk Reserve Fund.** In the first quarter of 2016, Yirendai set aside in the risk reserve fund an amount equal to 7% of the loans facilitated through its marketplace during the period, and made payments in a total amount of US$15.7 million out of the risk reserve fund to pay out the outstanding principal and accrued interest of default loans. As of March 31, 2016, restricted cash balance associated with the risk reserve fund was US$92.0 million.

**Delinquency rates.** As of March 31, 2016, the overall delinquency rate for loans that are 15-89 days past due was 1.8%, compared to 1.3% as of December 31, 2015.

**Charge off rates.** As of March 31, 2016, the charge-off rates for Grade A, B, C, and D loans originated in 2015 were 3.4%, 2.9%, 3.2% and 2.5%, respectively, compared to 2.4%, 1.3%, 1.7% and 1.4% as of December 31, 2015.

**<u>Other Operating Metrics and Business Results</u>**

- As of March 31, 2016, Yirendai had facilitated US$2.4 billion of loans on the Yirendai online marketplace since its inception in 2012.

- As of March 31, 2016, remaining principal of performing loans* totaled US$1,709.6 million, increased by 23% from US$1,384.4 million as of December 31, 2015 and 212% from US$547.8 million as of March 31, 2015.

- In the first quarter of 2016, the Yirendai platform facilitated loans for 50,542 borrowers, 55% of whom were acquired from online channels; 32.8% of the loans were facilitated through its mobile application.

- In the first quarter of 2016, the Yirendai platform facilitated loans for 203,131 investors, 100% of whom

8

were acquired from online channels, with annual returns ranging from 5.6% to 11.25%.

- In the first quarter of 2016, loans made to Grade A, B, C, and D borrowers represented 6%, 3%, 7% and 84% of the Company's product portfolio, respectively.

*Performing loans refer to loans on which payments of interest and principal are less than 90 days past due.

## **Recent Business Development**

- On April 25, 2016, Yirendai announced the completion of issuance of RMB 250 million asset-backed securities, the underlying assets of which are loans extended by a trust through the Company's online consumer finance marketplace with a total principal of the same amount.

## **Business Outlook**

Based on the information available as of the date of this press release, Yirendai provides the following outlook, which reflects the Company's current and preliminary view and is subject to change:

**Second Quarter 2016**

- **Total loans facilitated** will be in the range of US$640 million to US$650 million

- **Total net revenue** will be in the range of US$95 million to US$100 million

- **EBITDA** (non-GAAP) in the range of US$20 million to US$25 million

**Full Year 2016**

9

- **Total loans facilitated** will be in the range of US$2,800 million to US$2,900 million

- **Total net revenue** will be in the range of US$400 million to US$410 million

- **EBITDA** (non-GAAP) will be in the range of US$100 million to US$105 million

## Non-GAAP Financial Measures

In evaluating the business, the Company considers and uses two non-GAAP financial measures, fees billed and EBITDA, as supplemental measures to review and assess operating performance. The presentation of these non-GAAP financial measures is not intended to be considered in isolation or as a substitute for the financial information prepared and presented in accordance with accounting principles generally accepted in the United States of America ("U.S. GAAP"). The non-GAAP financial measures have limitations as analytical tools. Other companies, including peer companies in the industry, may calculate these non-GAAP measures differently, which may reduce their usefulness as a comparative measure. The Company compensates for these limitations by reconciling the non-GAAP financial measures to the nearest U.S. GAAP performance measure, all of which should be considered when evaluating our performance. See "Operating Highlights and Reconciliation of GAAP to Non-GAAP measures" at the end of this press release.

18.   On August 9, 2016, the Company issued a press release entitled "Yirendai Reports Second Quarter 2016 Financial Results." Therein, the Company, in relevant part, stated:

BEIJING, Aug. 9, 2016 /PRNewswire/ -- Yirendai Ltd. (NYSE: YRD) ("Yirendai" or the "Company"), a leading online consumer finance marketplace in China, today announced its unaudited financial results for the quarter ended June 30, 2016.

10

Starting from the second quarter of 2016, the Company changed its reporting currency from the U.S. dollar ("US$") to the Renminbi ("RMB"), to reduce the impact of increased volatility of the RMB to US$ exchange rate on the Company's reported operating results. The aligning of the reporting currency with the underlying operations will better depict the Company's results of operations for each period. This release contains translations of certain RMB amounts into US$ for convenience. Prior period numbers have been recast into the new reporting currency.

For the second quarter of 2016, Yirendai facilitated RMB 4,538.7 million (US$682.9 million) of loans to qualified individual borrowers on its online marketplace, representing a 118% year-over-year growth, with more than 40% of the loans being originated from online channel; recognized total net revenue of RMB 733.8 million (US$110.4 million), up 140% from the same period in 2015 and recognized net income of RMB 260.6 million (US$39.2 million), representing an increase of 226% from the second quarter of 2015.

In the second quarter of 2016, Yirendai facilitated 196,059 investors with total investment amount of RMB 5,246.0 million (US$789.4 million), 100% of which was conducted through its online platform and 78% of which was conducted through its mobile application.

* * *

"We're pleased to see continued momentum of robust business growth supported by our well-recognized brand, expanded product offering, and improved customer experience," said Ms. Yihan Fang, Chief Executive Officer of Yirendai. "At the same time, we have continued to strengthen our financial technology capabilities to enhance our competitive advantages. In June, we announced the appointment of Mr. Yang Cao as COO and CTO to lead our technology, product and engineering divisions and oversee business operations. As we keep solidifying our market leadership, we intend to broaden Yirendai's business scope

11

towards more comprehensive and integrated financial services. We believe these efforts and initiatives will be important pillars for our sustainable business growth."

"Our solid second quarter 2016 results were primarily attributable to the strong market demand for our products and services. In this quarter, our loan facilitation volume and total net revenue reached new record high while operating expenses and asset performance remained under control," said Mr. Dennis Cong, Chief Financial Officer of Yirendai. "As the regulation-led industry consolidation accelerates, we are seeing more business opportunities for Yirendai as a market leader. We will continue to expand our business in a disciplined manner and create value for all stakeholders."

**Second Quarter 2016 Financial Results**

**Total amount of loans facilitated** in the second quarter of 2016 was RMB 4,538.7 million (US$682.9 million), increased by 118% year-over-year from RMB 2,084.0 million in the same period of 2015, reflecting strong demand for our products and services. As of June 30, 2016, the Yirendai platform had facilitated approximately RMB 20.0 billion in loan principal since its inception.

**Total net revenue** in the second quarter of 2016 was RMB 733.8 million (US$110.4 million), increased by 140% from RMB 306.2 million in the same period of 2015. The increase of total net revenue was mainly attributable to the growth of loan origination volume and change of product mix on the platform.

**Total fees billed** (non-GAAP) in the second quarter of 2016 were RMB 1,110.8 million (US$167.1 million), increased by 131% from RMB 480.9 million in the same period of 2015 driven by the growth of loan origination volume and change of product mix on the platform.

**Operating costs and expenses** in the second quarter of 2016 were RMB 471.2 million (US$70.9 million), compared to RMB 195.3 million in the same period of 2015. The increase in

12

operating costs and expenses was in line with our net revenue growth.

**Net income** in the second quarter of 2016 was RMB 260.6 million (US$39.2 million), increased by 226% from RMB 80.0 million in the same period of 2015.

**EBITDA** (non-GAAP) in the second quarter of 2016 was RMB 265.0 million (US$39.9 million), increased by 138% from RMB 111.6 million in the same period of 2015. The significant increase of EBITDA was primarily due to the substantial growth of loan origination volume and revenue.

**Basic and diluted income per share** in the second quarter of 2016 was RMB 2.23 (US$0.34), increased by 98% from RMB 1.13 in the previous quarter and 178% from RMB 0.80 in the same period of 2015.

**Basic and diluted income per ADS** in the second quarter of 2016 was RMB 4.46 (US$0.67), increased by 98% from RMB 2.25 in the previous quarter and 178% from RMB 1.60 in the same period of 2015.

As of June 30, 2016, **cash & cash equivalents** excluding risk reserve fund balance was RMB 1,336.3 million (US$201.1 million), increased by 20% from RMB 1,110.0 million as of March 31, 2016.

**Net cash generated from operating activities** in the second quarter of 2016 was RMB 196.1 million (US$29.5 million), compared to RMB 322.0 million in the previous quarter.

**Risk Reserve Fund.** In the second quarter of 2016, Yirendai set aside in the risk reserve fund an amount of RMB 317.7 million (US$47.8 million), which is equal to 7% of the loans facilitated through its marketplace during the period. In the second quarter of 2016, the Company made payments in a total amount of RMB 155.8 million (US$23.4 million) out of the risk reserve fund to pay out the outstanding principal and accrued interest of default loans. As of June 30, 2016, restricted cash

13

balance associated with the risk reserve fund was RMB 755.2 million (US$113.6 million), compare to RMB 593.3 million as of March 31, 2016.

**Delinquency rates.** As of June 30, 2016, the overall delinquency rate for loans that are 15-89 days past due was 1.7%, improved from 1.8% as of March 31, 2016, as we see stable asset performance and continued growth of our loan portfolio.

**Charge off rates.** As of June 30, 2016, the charge-off rates for Grade A, B, C, and D loans originated in 2015 were 4.5%, 4.5%, 5.7% and 4.2%, respectively, compared to 3.4%, 2.9%, 3.2% and 2.5% as of March 31, 2016. As the 2015 vintage loans continued to mature, the charge off level is within our risk performance expectation.

## Other Operating Metrics and Business Results

- As of June 30, 2016, Yirendai had facilitated RMB 20.0 billion (US$3.0 billion) of loans on the Yirendai online marketplace since its inception in 2012.

- As of June 30, 2016, remaining principal of performing loans totaled RMB 13.8 billion (US$2.1 billion), increased by 25% from RMB 11.0 billion as of March 31, 2016 and 178% from RMB 5.0 billion as of June 30, 2015.

- In the second quarter of 2016, the Yirendai platform facilitated loans for 68,882 borrowers, 58% of whom were acquired from online channels; 39.2% of the loans were facilitated through its mobile application.

- In the second quarter of 2016, the Yirendai platform facilitated loans for 196,059 investors, 100% of whom were acquired from online channels, with annual returns ranging from 5.6% to 11.25%.

- In the second quarter of 2016, loans made to Grade A, B, C, and D borrowers represented 5.5%, 3.8%, 7.6% and 83.1% of the Company's product portfolio, respectively.

## Recent Business Development

- On June 13, 2016, Yirendai announced the appointment of Mr. Yang Cao to the positions of chief operating officer and chief technology officer, who will lead the Company's technology, product and engineering divisions and oversee business operations including customer acquisition, business development and product marketing.

## Business Outlook

Based on the information available as of the date of this press release, Yirendai provides the following outlook, which reflects the Company's current and preliminary view and is subject to change. The following outlook does not take into consideration the impact of stock-based compensation.

### Third Quarter 2016

- **Total loans facilitated** will be in the range of RMB 5,200 million to RMB 5,400 million (US$782 million to US$813 million)

- **Total net revenue** will be in the range of RMB 800 million to RMB 850 million (US$120 million to US$128 million)

- **EBITDA** (non-GAAP) in the range of RMB 140 million to RMB 160 million (US$21 million to US$24 million)

### Full Year 2016

- **Total loans facilitated** will be in the range of RMB 19,000 million to RMB 20,000 million (US$2,859

15

million to US$3,009 million), representing an increase of 2% to 4% from its original business outlook of US$2,800 million to US$2,900 million

- **Total net revenue** will be in the range of RMB 3,000 million to RMB 3,100 million (US$451 million to US$466 million), representing an increase of 13% to 14% from its original business outlook of US$400 million to US$410 million

- **EBITDA** (non-GAAP) will be in the range of RMB 800 million to RMB 850 million (US$120 million to US$128 million), representing an increase of 20% to 22% from its original business outlook of US$100 million to US$105 million

## **Non-GAAP Financial Measures**

In evaluating the business, the Company considers and uses two non-GAAP financial measures, fees billed and EBITDA, as supplemental measures to review and assess operating performance. The presentation of these non-GAAP financial measures is not intended to be considered in isolation or as a substitute for the financial information prepared and presented in accordance with accounting principles generally accepted in the United States of America ("U.S. GAAP"). The non-GAAP financial measures have limitations as analytical tools. Other companies, including peer companies in the industry, may calculate these non-GAAP measures differently, which may reduce their usefulness as a comparative measure. The Company compensates for these limitations by reconciling the non-GAAP financial measures to the nearest U.S. GAAP performance measure, all of which should be considered when evaluating our performance. See "Operating Highlights and Reconciliation of GAAP to Non-GAAP measures" at the end of this press release.

19.   The above statements contained in ¶¶ 17-18 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's

16

business, operations, and prospects. Specifically, these statements were false and/or misleading statements and/or failed to disclose that: (i) the Company was experiencing an increasing amount of fraud related to customer applications for its loan products; (ii) the implementation of new anti-fraud regulations by the Chinese government, in response to increasing fraud in the industry, could have a negative impact on the Company's performance; and (iii) as a result of the foregoing, Defendants' statements about Yirendai's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

20.     On August 24, 2016, *Bloomberg* published a news report entitled "China Imposes Caps on P2P Loans to Curb Shadow-Banking Risks." Therein, in relevant part, *Bloomberg* stated:

> China imposed limits on lending by peer-to-peer platforms to individuals and companies in an effort to curb risks in one part of the loosely-regulated shadow-banking sector.
>
> An individual can borrow as much as 1 million yuan ($150,000) from P2P sites, including a maximum of 200,000 yuan from any one site, the China Banking Regulatory Commission said in Beijing on Wednesday. Corporate borrowers are capped at five times those levels.
>
> Tighter regulation may encourage consolidation that aids the industry long-term, said Wei Hou, a banking analyst at Sanford C. Bernstein in Hong Kong.
>
> China's authorities are concerned about defaults and fraud among the nation's 2,349 online lenders. In December, the

country's biggest Ponzi scheme was exposed after Internet lender Ezubo allegedly defrauded more than 900,000 people out of the equivalent of $7.6 billion. The nation has 1778 "problematic" online lenders, according to the CBRC.

The P2P lenders are barred from taking public deposits or selling wealth-management products and must appoint qualified banks as custodians and improve information disclosure, the regulator said.

**'Step Forward'**

"The P2P business is not very strictly regulated yet, but you can see the regulator is taking a step forward," said Xu Hongwei, chief executive officer of Shanghai-based Yingcan Group, which tracks the industry.

In April, China's cabinet launched a campaign to clean up illicit activities in Internet finance, focusing on areas such as third-party payments, peer-to-peer lending, crowdfunding and online insurance. It suspended the registration of all new companies with finance-related names.

China's P2P industry brokered 982 billion yuan of loans in 2015, almost quadruple the amount in 2014 and an approximately 10-fold increase from 2013, according to Yingcan. P2P firms attracted more than 3.4 million investors and 1.15 million borrowers in July, with loans extended at an average interest rate of 10.3 percent, according to Yingcan.

Products offered by P2P platforms in China can include anything from loans for weddings, guaranteed against the cash gifts that couples expect to receive, to high-yield lending for risky property or mining projects.

21.   On this news, Yirendai's ADS price fell $6.92, or 22%, to close at $24.52 on August 24, 2016, on unusually heavy trading volume.

18

## CLASS ACTION ALLEGATIONS

22.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Yirendai securities during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

23.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Yirendai's ADSs actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Yirendai shares were traded publicly during the Class Period on the NYSE. As of December 31, 2015, Yirendai had 58,500,000 ADSs outstanding. Record owners and other members of the Class may be identified from records maintained by Yirendai or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

24.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

25.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

26.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Yirendai; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

27.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members

of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## **UNDISCLOSED ADVERSE FACTS**

28.     The market for Yirendai's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Yirendai's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Yirendai's securities relying upon the integrity of the market price of the Company's securities and market information relating to Yirendai, and have been damaged thereby.

29.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Yirendai's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Yirendai's business, operations, and prospects as alleged herein.

30.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.

As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Yirendai's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

31.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

32.     During the Class Period, Plaintiff and the Class purchased Yirendai's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

33.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the

Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Yirendai, his/her control over, and/or receipt and/or modification of Yirendai's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Yirendai, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

34.     The market for Yirendai's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Yirendai's securities traded at artificially inflated prices during the Class Period. On August 18, 2016, the Company's ADS price closed at a Class Period high of $37.50 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Yirendai's securities and market information relating to Yirendai, and have been damaged thereby.

35.     During the Class Period, the artificial inflation of Yirendai's share price was caused by the material misrepresentations and/or omissions particularized in this

Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Yirendai's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Yirendai and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company share price. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

36.    At all relevant times, the market for Yirendai's securities was an efficient market for the following reasons, among others:

(a)    Yirendai ADSs met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    As a regulated issuer, Yirendai filed periodic public reports with the SEC and/or the NYSE;

(c)    Yirendai regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other

wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Yirendai was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

37.     As a result of the foregoing, the market for Yirendai's securities promptly digested current information regarding Yirendai from all publicly available sources and reflected such information in Yirendai's ADS price. Under these circumstances, all purchasers of Yirendai's securities during the Class Period suffered similar injury through their purchase of Yirendai's securities at artificially inflated prices and a presumption of reliance applies.

38.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor

might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

39.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Yirendai who knew that the statement was false when made.

# FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

40.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Yirendai's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

42.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Yirendai's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

43.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Yirendai's financial well-being and prospects, as specified herein.

44.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Yirendai's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Yirendai and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

45.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of

28

the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

46.   The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Yirendai's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

47.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Yirendai's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Yirendai's securities during the Class Period at artificially high prices and were damaged thereby.

48.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Yirendai was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Yirendai securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

49.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

30

50.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

51.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Yirendai within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

31

53.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

54.    As set forth above, Yirendai and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 30, 2016

Respectfully submitted,

**POMERANTZ LLP**

By: *s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:   (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:   (212) 661-1100
Facsimile:(212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:   (312) 377-1181
Facsimile:   (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

**GOLDBERG LAW PC**
Michael Goldberg
Brian Schall
1999 Avenue of the Stars
Suite 1100
Telephone: 1-800-977-7401

33

Fax: 1-800-536-0065
Email:  michael@goldberglawpc.com
Email:  brian@goldberglawpc.com

*Attorneys for Plaintiff*